Good morning. May it please the Court. Jennifer Coon, Federal Defenders, on behalf of Mr. Hernandez. I'll speak up. Jennifer Coon, Federal Defenders, on behalf of Mr. Hernandez. I would like to try to reserve three minutes for rebuttal. Well, you have to try. You can't. All you have to do is stop. This conviction should be reversed because Mr. Hernandez was eligible for voluntary departure and any contrary interpretation of the statute would raise serious constitutional concerns. It also should be remanded for resentencing because California's sodomy can be violated by duress, which is not equivalent to physical force, and so that statute is categorically overbroad. Turning first to the voluntary departure issue, if I could just cut to the chase, the Attorney General's interpretation of the statute is basically one step away from a full repeal. Could you speak up a bit? Yes, I'm sorry. The Attorney General's interpretation of the statute is basically one step away from a full repeal, and so I think this presents really the second-hardest case that the Court could confront, the hardest case being that the statute, as it's written, provides for voluntary departure for a class of aliens, including Mr. Hernandez, and then the Attorney General would fully repeal that statute and say no voluntary departure for anyone. That would be the hardest case. Here we are on the second-hardest case where the statute has made a distinction, an explicit distinction between aliens who've been convicted for an aggravated felony after admission, and the Attorney General purports to eliminate that very distinction in an interpreting regulation. The statute expressly permits voluntary departure for any alien except those convicted of an aggravated felony after admission and those with certain non-terrorist concerns. Here Mr. Hernandez had entered without inspection, so there was no conviction after admission. The plain language of the statute controls. It's not ambiguous. We can't interpret the statute to make that plain language surplusage or nullity. We must give effect to every word, and this is a case where Congress has spoken directly to the issue and made a distinction. The Attorney General's regulation, 1240.26, is invalid because it's a partial repeal of that very statutory provision. It's not entitled to any Chevron deference because Congress has spoken to the issue at hand. And as the interim regulations I've cited show, the Attorney General was aware of the conflict with the statutory text when the regulation was promulgated. Now we have the other provision of the statute, subsection E, which purports to give the Attorney General, purports to allow the Attorney General to further restrict eligibility for voluntary departure for any class of aliens with no judicial review. But to interpret that provision in line with the Attorney General raises some serious constitutional concerns. We have separation of powers problems, like the line item veto case, the Clinton case that I cited, which involved the presumption clause. This gives the executive branch legislative power to repeal legislation in whole or in part, to make a voluntary departure entirely unavailable with full repeal, or to eliminate the distinction that Congress made, which is what the Attorney General did here. And so that regulation can't be valid. It also violates the non-delegation principle because in purporting to allow the Attorney General complete discretion to further restrict eligibility, it gives no principle or guidance to the Attorney General to limit eligibility. It's unlike areas which this Court has upheld. Delegation, for example, the Sentencing Commission case, Mistretta, which the government has cited, or, for example, the delegation to create drug schedules, which have very specific and detailed direction to the agency. Here there's no direction or guidance at all. There's no specific purpose. There's no duty to determine which cases fall within a general rule. So it raises serious constitutional concerns. I think the only way to avoid these constitutional concerns is to construe the statute to be limited to authorize only legitimate administrative purposes. For example, like the other provisions of the regulation, which we're not opposing, which impose administrative requirements, which would reduce the administrative burden of voluntary departure. If that's no questions on this point, I'll move on to the sentencing issue. Well, you say that you've got a problem, but apparently you have to show prejudice, don't you, also? And the voluntary departure? You have to show prejudice. You claim there's a violation, but don't you have to show prejudice? Yes. In this case, the district court assumes statutory eligibility for voluntary departure. So we do have to show plausible grounds for relief in the district court. And how do you do that, starting with pre-conclusion? Well, unlike other provisions of relief, such as 212H waivers, there's no requirement in voluntary departure that an alien show, you know, extreme hardship and so on. But certainly the immigration courts are doing a balancing of equities when they're deciding whether to grant voluntary departure. But the discretion is very broad. Isn't it? Is there a statement here that suggests that there was a discretion was exercised against your client? The I.J. told Hernandez, how do you read this? Based on your criminal history, you are not eligible for any form of relief, including voluntary departure, in an exercise of discretion. Does that suggest that it's sort of an alternative holding? I'm exercising discretion and you're not getting it. No, that's not how I read that. How do you read it? I read that the immigration judge was informing him that he was ineligible for this form of discretionary relief. Not that the immigration judge was exercising the discretion, but that he was ineligible for any exercise of discretion. And that statement, that construction is consistent with the immigration judge following the attorney general's regulation, which I think we can't follow in this case without raising serious constitutional concerns. But as to your question about prejudice, all he needs to show is plausible grounds for relief. As we have demonstrated in the papers, he had extremely strong ties to this country, 20 years living in the country, a good work record with good references from his employer, strong family ties to a common law U.S. citizen wife, a U.S. citizen child, another on the way, two U.S. citizen stepchildren, and extreme economic hardship to his common law wife who ultimately lost the family home and the family vehicle and was reduced to living in a trailer, as well as the loss of his emotional connection to his family, which was all. It doesn't appear that he was eligible for an adjustment of status. Would you dispute that? He wasn't immediately eligible at the time of the hearing. Had he been granted a continuance, he could have married his common law wife, and she did say in her declaration she would have done so if she understood that it would have helped him. The district court here made a finding that this partial transcript that was provided by you, that was supposedly the transcript of the underlying hearing, which judge is this? It's Judge Lorenz. Judge Lorenz says, It's unclear whether the submission is an accurate and complete reflection of the proceedings since there was not any authentication provided with the submission. Therefore, the court has no reliable means of determining whether the defendant was advised of available forms of relief from deportation or the false circumstances of defendant's waiver of appeal. And then from that, it concludes that the government is therefore precluded from arguing that there's a bar to collateral attack based on failure to exhaust. I guess my question is, we're not even sure that this is an authentic, reliable document. How can we interpret what that I.J. was saying? Because I agree with Judge Trott. It's susceptible to two different interpretations. You could interpret it as a then and there exercise of discretion, or you could just interpret it as him saying, I don't think you have any rights without making any consideration. I don't know how much weight to give either one of those interpretations, given that the district court made the finding that it's not reliable in the first place. I think it's extremely implausible that the immigration judge would have exercised his discretion in contravention to the regulation that he would have felt bound to follow. It is true that Judge Lorenz put the burden on the government in this case to establish a lack of a due process violation. I think it's not necessary to decide this on a burden ground, because had Mr. Hernandez not been advised of his eligibility for relief, then that itself would establish the due process right. If I could turn to the sodomy issue. California's sodomy is not categorically a crime of violence because it does not require the use of physical force. Whatever definition of crime of violence is used, physical force is required. And there's two potentially applicable prongs here. There's the catch-all provision under the sentencing guidelines, which explicitly requires the use, attempted use, or threatened use of physical force. So are you suggesting a remand on that to find out whether it's non-categorical or whatever the alternative is to modified categorical? No, Your Honor. The government has waived that argument below. How did it waive it? A known waiver and forfeiture are quite different. Where did the government waive the argument? The government explicitly declined to make a showing below. What does explicitly declined mean? The government stated it did not feel it was necessary to make a showing under the modified categorical approach. Where did it say that? I'll get you the site of my rebuttal. Thank you. But where? In what court? In the district court. And then I raised the issue again in my opening brief, and the government again made no argument under the modified categorical approach. In your brief to the district court or here? Here, Your Honor. When you raised it in your opening brief, they said something specifically or they just failed to respond? They failed to respond. They failed to make any showing under the modified categorical approach. And they submitted no judicially noticeable documents to the district court that would allow consideration of the modified categorical approach. As I was saying, both prongs of the crime and violence definition do require physical force. It's explicit in the catch-all provision. In the forcible sex offense provision, I think it's clear from the court's holdings in Lopez Montanez and Beltran Munguia. So the two prongs do have some differences, but for purposes of this appeal, they essentially collapse in that they do require the use of physical force. Now, California sodomy statute 2862 can be violated without the use of force. That statute provides it can be violated by force but also by duress. And the California courts have repeatedly construed the term duress to include psychological coercion and to provide that duress is not the equivalent of physical force. Is forcible sex, sitting inside the catch-all, does a forcible sex offense require physical force? Yes. I think it could be clearer in this court's case law, but I think it's clear enough. In the Lopez Montanez case, the court was looking at the sexual battery statute. You can get some water if you want. Oh, thank you. When you sit down, could you go on to a minute and a half? Just to briefly finish the question. In the Lopez Montanez case, the court held that psychological force was insufficient. You don't like the idea of constructive force, the way the Fifth Circuit refers to it? No. Duress is constructive force. No, I think that... That might work there in the Fifth Circuit, but not in the Ninth Circuit. Luckily, we're not in the Fifth Circuit. I'm sorry. I'm going to take up some more of your time. I read the police report, and it's unclear to me. He raped the woman, telling her he had a loaded gun in the car. But was there even a gun in the car? No, we're not stipulating to the facts in the police report, nor are those... We don't know. We don't know whether he was just lying to the victim, saying he had a loaded .38 in the car. Your Honor, the police report is not a judicially noticeable document. We don't agree with the facts. It's in the record, but I'm just... So, if he just lied to the victim and said, I have a gun, and I could use it on you, And then she submits that you're saying that would not be a forcible sex offense. No, I think that hypothetical, that is a hypothetical, would involve the threat of use of force, and I think that would fall within the crime of violence definition. But all we're on at this point is that the statute categorically covers more than the use of force. How is it? Is that the question? No, no. I said that's the only issue before us now. He's telling me I shouldn't be asking this question. Let me just sit down. Thank you. I'm just curious about this. On the remand point. Good morning, Your Honors. May it please the Court. Victor White. I represent the United States in this case. I want to briefly talk about the first issue that was discussed by the appellant and specifically a question that Judge Trott asked about whether or not the, whether or not the appellant would still have to show prejudice. And in this case, not considering right now the validity of the regulation, the appellant cannot show prejudice for preconclusion voluntary departure because the immigration judge, after considering the criminal history, after advising of the rights, as Judge Trott pointed out in the excerpts of record at page 86, the immigration judge said, you are ineligible for all relief in an exercise of discretion, including voluntary departure. I don't know what that means. And based on what? Well, anyway, first, ineligible as a matter of discretion is totally incomprehensible. That's confusing. He's either ineligible or he's denying it as a matter of discretion. Well, let's go in turn. With the regulation, the regulation bars aggravated felons, regardless of whether they entered illegally. That's when you're ineligible. Okay. That's not a matter of discretion. That's not a matter of discretion, but the voluntary departure statute itself is a discretionary determination by the Attorney General. This Court has held before in Villanueva that it's a discretionary determination. The statute itself, 1227A, says the Attorney General may allow for aliens to voluntarily depart. So is your argument that he was eligible for this relief? No. But the I.J. said, and I'm going to exercise my discretion, even though you're eligible and you're denied. I'm sorry to have interrupted, Your Honor. The argument's twofold. One, that he was ineligible as a matter of law. The regulation is valid. Even if the regulation were invalid, he would be ineligible and unable to establish prejudice as a matter of discretion, which the ---- You're not ineligible as a matter of discretion. You're either ineligible or it's a matter of discretion. Or you're eligible and then he exercises his discretion. You're not ineligible as a matter of discretion. You're ineligible, as you just said, as a matter of law. Excuse me, Your Honor. Yes. So ineligible as a matter of law, a denial of voluntary departure and an exercise of the immigration judge's discretion. But he said you're ineligible as a matter of discretion. Which is, I said incomprehensible. I don't know what you want to tell me. That might mean I'm not going to exercise my discretion because you're ineligible for me to do that. Well, the sentence is confusing. You are not eligible for any form of relief. Okay? You're not eligible, period. And then it says including, which seems to suggest you're not eligible for a discretionary decision. Yes. And it's important to note when this statement came from the immigration judge. The immigration judge first advised the defendant of his rights, went through with determining whether or not the alien wanted additional time to obtain an attorney, informed the alien of the charges against him, and then went through a series of questions to determine whether or not there was any possible derivative citizenship through any parents in the United States, and whether or not there was any immigrant petition pending. And there was no immigrant petition, no visa petition pending at that time. And the immigration judge also confirmed that as alleged in the charging document, the alien had been convicted of attempted sodomy and attempted kidnapping. And so the statement that I do find that you are removable as charged on both counts based on all of your admissions to allegations one through five has to be considered when he then goes on to say based on your criminal history, you are not eligible for any form of relief, including voluntary departure in an exercise of discretion. So the judge was not exercising discretion. The judge was simply saying you're ineligible for that. Is that the way you read it? No, the way I read it is based on your criminal history, the voluntary departure, even pre-conclusion voluntary departure, involves a balancing of equities. Based on the criminal history that the immigration judge had already gone through and confirmed the alien had admitted the attempted sodomy and the attempted kidnapping, the immigration judge said as a matter of discretion, this form of relief voluntary departure is being denied to you. Well, are they those crimes without regard to whether they're categorically a crime of violence included in aggravated felonies under the Immigration Act? Yes. Both as defined under the Immigration and Nationality Act, both the attempted sodomy and the attempted kidnapping are aggravated felonies. Do you have to – are they by definition or is there a categorical, modified categorical analysis that applies to that as well? There's the same categorical and modified categorical analysis, and there were cases cited in the brief for the holding that the attempted sodomy and even in this case, appellant concedes that the attempted sodomy conviction is an aggravated felony as defined in the Immigration and Nationality Act. There's no challenge to that, I could see. There's no challenge. And I would like to point out that the appellant raises, while it's the government's position that the aggravated felony is the crime of violence, which involves at a minimum as an inherent offense that involves a substantial risk of use of force, appellant wants to argue that it could fall within non-forceable rape. But in any event, this is precisely the sort of conviction that Congress had meant to exclude people from any form of relief. If we look at the Immigration and Nationality Act, the Attorney General is charged with detaining aggravated felons, so it wouldn't make sense to allow for a pre-conclusion voluntary departure for someone who entered illegally and put them somehow on a better footing than someone who had actually submitted themselves to the inspection process. If they were going to be leaving, I mean if they're leaving the country anyway, what difference does it make? We're getting rid of these aggravated felons. I think the main difference is the abuse of trust and what it is that they committed while they were in the country illegally. And the idea to have a tally and some sort of record on them so that in the event that they come back in the future, there would be a means to prosecute them criminally. That's why the Immigration and Nationality Act also includes the provision for expedited removal for aggravated felons. And as I previously mentioned, Section 1226 includes a mandatory detention for precisely these sorts of aliens who have committed what Congress has deemed to be especially aggravated felons. In any event, when you get to the sentencing, you're in a different ballpark. Yes. The first question I have is did you explicitly disclaim any opportunity to use the modified categorical approach in the district court? No, Your Honor. This is a case that I actually took over for a colleague. The arguments at the district court level were that attempted sodomy was under the categorical approach a crime of violence, and the twofold being forcible sex offense and one involving the catch-all as in the use, attempted use or threatened use. The other side, did you hear me when I asked the other side, was this explicitly addressed? Was there a waiver? And she said, yeah. You, the government, said we're not interested in the modified categorical approach or something along those lines. Are you telling us there's nothing in the record anywhere that would suggest that that's the case? There is nothing that suggests that. However, I understand the defense counsel's argument that we had somehow waived it by not responding to the argument. The government's position is the district court's finding was under the categorical approach. Yes, it was, no doubt about that. The question was different. The question was not what was the district court finding, but was there an invitation to you or an argument by the other side that there should be to be examined under modified categorical and the government declined to introduce evidence? Your Honor, based on the position at time in front of the district judge, no, there wasn't an additional level of argument that it would somehow meet under the modified categorical approach. Again, based on the argument that primarily it's a categorical. So you didn't use belt and suspenders. The other side is furiously looking through the excerpt for something. We'll see if she finds anything. And, Your Honor, in the event that this Court determines that categorically it does not qualify as either a forcible sex offense or under the catch-all for use, attempted use or threatened use of force, we would ask for Greenman to examine it under the modified categorical approach. But just briefly to look at it. The case you could have done in the district court to begin with introduced the necessary evidence, but you didn't do it. Well, Your Honor, our position is that we have a strong argument that attempted You wanted to rest on that argument exclusively, and you didn't care about what happened if you lost because you had such a strong argument. That's noted, Your Honor. When you're in the Ninth Circuit, belt and suspenders is always a good idea. Lesson learned. Thank you. Well, that's the California statute. You could have read the cases and seen that it covered more than the use of physical force. Judge Reinhart, with regard to specifically the use of more than physical force, in Bolanos, this Court's decision in Bolanos, which involved assault with intent to commit rape. There was the finding that for forceful sex offense, it does not require violent force. And the case law that's cited in Bolanos specifically looks at what's this force that has to be used. In People v. Davis, they look at the fact that it is forced to commit the offense, the penetration offense, against the victim's will. And in People v. Elam, it looks at the both assault with intent to commit a sexual felony, as well as forcible oral copulation. And it looks at the fact that to complete the act, the degree of force is the force necessary to complete the act against the victim's will. And so, like in Bolanos, attempted sodomy here can be accomplished in one of five manners. It's against the victim's will by force, violence, duress, or, excuse me, by force, violence, duress, menace, or fear of immediate and unlawful bodily entry. And here, even assuming the appellant's argument about psychological coercion as one of the factors involved in duress, because the California case law also indicates that it's what is involved as part of duress. It's not psychological coercion on its own. And, in fact, one of the authorities cited by the appellant, the People v. Espinoza, notes that it's really looking at some form of psychological coercion plus some sort of something against the victim's will, some implied threat sufficient to overcome a victim's resistance. And so, really, to look at the existing case law in Bolanos-Hernandez with intent to commit rape, which we believe to be analogous to the instant offense of attempted sodomy. Well, have you read the Espinoza case out of the California Court of Appeal? It says physical control can create duress without constituting force. Duress would be redundant in the cited statutes if its meaning were no different than force, violence, menace, or fear, et cetera, et cetera. So it suggests there is a fine line drawn only by Philadelphia lawyers that we're dealing with. Your Honor is correct. And also later in the Espinoza case, the at 95 Cal App, 4th at 12, at 1321, it also notes that duress cannot be established unless there is evidence that the victim's participation was impelled, at least partly, by an implied threat. So it's not divorcing completely the force sufficient to accomplish something against the victim's will from the force of a penetration. And I believe that it's Judge Talman's concurring opinion in the Beltran-Monjia case, which really kind of brings back to the overarching approach of what's a forcible sex offense. From the concurring opinion at 489, 5th, 3rd, 1043, Judge Talman notes that I have conceptual difficulties characterizing the force of physical penetration imposed on an unwilling victim as different in kind from the physical force imposed to overcome the victim's unwillingness. From the victim's perspective, both acts are violent and surely nonconsensual. And so really in this sentence. It says he has difficulty with conceptualizing. Now, where does that leave us? Right. And the thing is, here it's not just nonconsensual. It's not in the situation of a second-degree assault statute in Oregon that was examined in Beltran-Monjia or in the Lopez Montanez with an ephemeral touching. We're dealing with a violent penetration, a sexual penetration. Well, we don't know what we're dealing with here. How do we know what the facts are in this case? Now you're talking modified categorical. Well, Your Honor, what we know of the facts are that there was a conviction after jury trial for both attempted sodomy and attempted kidnapping. Right. And what does attempted sodomy mean? Well, attempted sodomy requires a specific intent, and sodomy itself requires a penetration, specifically a penetration of the penis. But attempted doesn't require it. I mean, this is what we're talking about. What does the statute mean? Well, the government's position is it means a forcible sex offense because even in the most de minimis means of accomplishing it, it's a sexual penetration, and even by duress, it involves an implied threat. But that's what we're back to, whether it requires the use of force. 2L1.2 is what we're looking at. Whereas the crime of violence. We can't talk about this particular case because we don't have anything except that he was convicted under the statute. So we're talking about the statute. Yes, Your Honor, we're talking about the statute and the statute specifically because you didn't bother to introduce anything about this particular case, the record of conviction or anything that told us what happened in this case, except the pre-sentence report, I guess, or the arrest report, which doesn't tell you much about what a jury found. But we have here, Your Honor, in the statute, one of the elements is not just the sexual penetration. You want to rely on the statute exclusively? Your Honor, with regard to the argument as to the crime of violence, yes, with regard to it being categorical. However, as previously stated, we would like an opportunity if this court. Second shot. Yes, Your Honor. I'm so puzzled about it. I haven't found any statement by the government below. But in the defendant's sentencing memorandum, the defendant says the government has not met its burden to establish a crime of violence under a modified categorical approach. So you knew that you were going to rise or fall with the categorical approach at that point. You were on notice of that, yet still chose not to put in a plea agreement or a conviction or anything that would tell us the charging documents, what would underlay it. Well, Your Honor, we were relying on the underlying record, and we were relying on the district court's finding under a categorical approach. So what this goes to, though, is do we give you a second chance, a second bite at the apple? If the government made a strategic choice not to do that and rely on this particular argument. Your Honor, this is, again, a case I took over for a colleague, but we would ask for. When did you take it over? At the appellate level. So, okay, so. Yeah, that really has very little to do with it. Yeah. I don't know who it is. I mean, it's the government. I mean, you can't tell us why your colleague may not have made the right choice. All you can say is, well, I don't know why he did that. We'll have him reprimanded. I don't know what. Well, next time you better do that. Certainly. But just in closing, Your Honor, unless there are additional questions, this is, again, a very different statute than the one that's been previously found in Beltran-Muñiz or Lopez-Montanez, where they were finding that it didn't involve force of the sort to qualify under a forcible sex offense. This is, again, an aggravated form of a sexual penetration, and it has to be accomplished against the victim's will. Thank you. Yes. Those will be two minutes. Thank you. Regarding those record sites, Judge Ward last quoted one of the sites I was going to give at ER 143, where I said in my sentencing memo that the government had not met its burden to establish a criminal record. All right. But what did the government say, Everett? Yes, Your Honor. You said the government said. Yes. At the sentencing hearing at ER 158, the court asked me, why can't it be under the modified categorical approach? And I said because there had been no showing. And then when it was the government's turn to speak at ER 159, the government said, one, I don't think we get to the modified categorical for the reasons I explained earlier and are set forth in our papers. So they were on notice, as they would have been anyway, that in any case where you get past the categorical approach, you go to modified categorical, but they specifically declined to make any showing. Well, specifically declined is sort of an exaggerated characterization of what they said. They said, we don't think we need to get to it. But he didn't say, do you want to introduce those documents now? And then if they said no, that would be specifically declined. He said, why aren't they here? And they said, because we don't think we need to. Exactly. But that was in the middle of a sentencing hearing. There was a question about why they hadn't done it. And instead of saying because we made a mistake, they said, well, because we don't think we need to. The judge agreed with them. They chose to rest their argument on the categorical approach, and that was the choice that they made. Well, it's still different from expressly declining. But it may be that they made a choice. To move on. The judge didn't say, okay, we'll delay the hearing until you have an opportunity. You know, we'll call it off in the middle of it. We'll give you an opportunity to submit your documents. And they said, no, don't bother. No, but the court did ask several times, why aren't we getting to the modified categorical approach? Well, you gave us one. Did they ask that before the hearing? Several times. I'm sorry. I should be more clear in my language. Sounds like frequently to me. The side that I gave was the court said, why can't it be under the modified categorical approach again? And I said, because there had been no showing, as I had said in my sentencing papers. And then the government's attorney said, we don't get to the ‑‑ So it was one exchange, not several times? Yes, I'm sorry. It was one exchange. I'm going to view this attorney by case. Pardon me? See, this is the problem. Nobody is ever satisfied with what was. You always have to sort of shade a little bit. And that's when everybody gets into trouble. Pardon me, my mistake. Just to briefly respond to the government's other points, regarding the police report in particular, we do know that the jury didn't agree with the government's theory in total, because as it stated in the PSR, there was an acquittal and a mistrial and several other counts. So the police report is not a judicially noticeable document. But we don't know the facts that happened here. And, again, I think that the government made that strategic choice, although I know we don't need to remand here. The definition of duress does include threats of retribution and controversially hardship. But the California cases have held, as I've cited in my brief, the Minsky, the Serrano case, also the Adams case, that you can have adult sexual offenses involving nonphysical forms of duress. And I think that's consistent with the Lopez-Montanez case, a sexual battery case, which found that psychological force was not sufficient for a forcible sex offense. And the case that they, one case that they cited there in the Lopez-Montanez case, the People v. Grant case, was similar to these adult sex offense cases I've cited. In that case, it was a person posing as a policeman as a means of getting some sexual activity. So that's not a crime of violence? That's not a crime of violence because it doesn't involve physical force. And the cases, the California adult sex cases, similarly allow commission by nonphysical forms of duress, psychological coercion, which can't categorically qualify as a crime of violence. Thank you. Thank you, Pam. Thank you both. Case history will be submitted.
judges: Reinhardt, Trott, Wardlaw